UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/14/2023
```

-----------------------------------------------------------------------X
:
CARLOS J. GUZMAN,                                                       :
:
                                          Plaintiff,                    :
:                           22-cv-01916 (LJL)
-v-                                                     :
:                           OPINION AND ORDER
BUILDING SERVICE 32BJ PENSION FUND et al.,                             :
:
                                          Defendants.                   :
:
-----------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

        *Pro se* Plaintiff Carlos Guzman ("Plaintiff" or "Guzman") brings claims against the

Building Service 32BJ Pension Fund ("Pension Fund") and other individual defendants under the

Employee Retirement Income Security Act of 1974 ("ERISA").  Dkt. No. 1.  Defendants[1] move

to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

claim for relief.  Dkt. No. 16.

        For the reasons that follow, the motion to dismiss is granted.

## BACKGROUND

        The following facts are drawn from Plaintiff's complaint and his opposition to the motion

to dismiss[2] and are accepted as true for purposes of the present motion.

---

[1] Defendants are the Pension Fund, Peter Goldberger, Ronald Raab, Kyle Bragg, and Howard
Rothschild.

[2] "Because [Guzman] is proceeding *pro se*, the Court may consider new facts raised in
opposition papers to the extent that they are consistent with the complaint, treating the new
factual allegations as amending the original complaint."  *Davila v. Lang*, 343 F. Supp. 3d 254,
267 (S.D.N.Y. 2018); *see also Walker v. Schult*, 717 F.3d 119, 122 (2d Cir. 2013) ("A district
court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his
papers opposing the motion.").

Guzman has been a member of Service Employees International Union Local 32BJ ("32BJ Local") and a participant in the Pension Fund since February 1970.  Dkt. No. 1 at ECF p. 6.  For the past thirty years, he has also been an active opponent of the 32BJ Local administration, headed by several different presidents, including the current president Kyle Bragg.  *Id.* at ECF pp. 6–7.  Guzman ran for president in the 32BJ Local unionwide election in 1992, 1995, 2015, 2018, and 2021.  *Id.* at ECF p. 6.  He also filed suit in 1992 against 32BJ Local officers who approved surveillance on himself and his family in order to intimidate him and prevent him from speaking about increases in union dues and officer salaries.  *Id.*  In addition, in 1991, Ronald Raab, who is presently legal counsel to the 32BJ Pension Fund, wrote a letter to Guzman threatening legal action if he made false statements.  *Id.* at ECF p. 8.  A court found that the letter to Guzman had the foreseeable effect of inhibiting and stifling the exercise of Plaintiff's free speech rights and issued a permanent injunction enjoining members of the 32BJ Local's joint executive board.  *Id.*

The heart of Plaintiff's claim concerns the calculation of his monthly pension.  Generally, members of the Pension Fund have a right to a pension at Normal Retirement Age of sixty-five years old.  *See id.* at ECF p. 10.  Guzman turned sixty-five in 2012, *id.* at ECF p. 9; however, he did not commence his pension benefits at that time and continued to work, *id.*

In or around January 2019, Guzman requested an application to the Pension Fund in order to receive his monthly pension benefits.  *Id.*  He was approaching the "Required Beginning Date" for benefits which was April 1, 2019.  *Id.*  The Pension Fund sent an application with an explanation of Guzman's pension benefit and informed him that he had 521 months of service credit and thus his monthly benefit would be $1,317.  *Id.*

On February 18, 2019, Guzman responded that he did not agree with the estimated pension benefit and that he was instead entitled to a monthly pension benefit of $2,462.[3]  *Id.* According to Guzman, he was entitled to an increase in his benefits due to the fact that he did not begin to collect benefits at his normal retirement age of sixty-five but waited until April 1, 2019, when he was seventy-two years old, to request his benefits.  Dkt. No. 22 at ECF p. 2.  On February 25, 2019, the Pension Fund responded.  Dkt. No. 1 at ECF p. 9.  In that response, the Pension Fund informed Plaintiff that the Appeals Committee meeting would take place on March 14, 2019, and stated: "Please be advised that you are not required to be present at the meeting." *Id.*  According to Guzman, the Pension Fund did not provide the specific reasons and/or refer to the specific provisions on which its decision was based or explain why Guzman was only entitled to a $1,317 monthly pension benefit.  *Id.*

On March 19, 2019, the Pension Fund mailed Guzman its decision.  *Id.*  It stated that the Appeals Committee had denied Guzman's appeal.  *Id.*  According to the Committee, Guzman was not entitled to an increase in his monthly benefits due to the delay between when he could begin receiving them (at sixty-five years old) and when he requested them because when he reached the age of sixty-five on September 24, 2012, he did not retire but continued to work.  *Id.* It further stated that if Guzman disagreed with the decision, he had the right to bring a civil action in the court of law.  *Id.*

Guzman does not contest that he continued to work during this period, but argues that none of the articles of the collective bargaining agreement ("CBA") state that when employees

---

[3] It is unclear exactly what monthly pension benefit Plaintiff claims to be entitled to.  In his complaint, he states that he "informed the Fund that I am entitled to a monthly pension benefit of $2,462." Dkt. No. 1 at ECF p. 9.  However, in his opposition to the motion to dismiss, he states that he is entitled to a monthly pension benefit of $2,376.  Dkt. No. 22 at ECF p. 2.

reach the age of sixty-five years old, their job becomes disqualifying employment.  *Id.* at ECF p. 10.  He also notes that he never received any notice between September 2012 to the "present" notifying him that his benefits would be suspended for the years that he worked after turning sixty-five.  *Id.* at ECF p. 9.

Guzman also alleges that this calculation of his benefits was in error.  *Id.* at ECF pp. 9–10.  According to Guzman, because he delayed the commencement of the benefits until the age of seventy-two, he is due an actuarial adjustment of $1,105.34, resulting in a total pension benefit of $2,376.  Dkt. No. 22 at 2.  He states that this additional amount of benefits per month is to "compensate for the benefit being paid over a shorter time frame."  *Id.*  In support of this point, he quotes the Pension Fund Summary Plan Description dated January 2002, which states under the title "WHEN PENSION BENEFITS BEGIN":

> Pension benefits are payable on the first day on [sic] the month following the date a person has fulfilled the eligibility rules for such benefit and proper application is made to, and received by the Fund Office.  You must begin to receive your benefit on April 1 of the first calendar year after you reach the age of 70 1/2, even if you are still working in covered employment.  If your benefit begins after you reach Normal Retirement Age (which for most participants is age 65), the amount of your benefit will be actuarially increased to reflect the delay in commencement.

Dkt. No. 1 at ECF pp. 9–10.

Guzman also alleges that he is being retaliated against due to his dissent activities against the (1) Pension Fund, (2) Peter Goldberger, the Executive Director of the Pension Fund; (3) Ronald Raab, Legal Counsel for the Pension Fund; (3) Howard Rothschild, Employer Trustee; and (4) Kyle Bragg, the Union Trustee of the 32BJ Local.  *Id.* at ECF pp. 4–5.

Guzman also appears to allege that Defendants breached their fiduciary duty, stating that the "Trustees in all matters shall act solely in the interest of the participant and beneficiaries."  *Id.* at ECF p. 10.  He notes that "the employers and trustees of the Local 32BJ have a long-term practice of short-changing member benefits."  Dkt. No. 22 at ECF p. 4.  On February 18, 1992,

he requested that the Pension Fund provide him with service credit records. *Id.* The Fund

provided him a letter stating that he "ha[s] credits beginning on 1970." *Id.* On May 10, 1994, he

again went to the Pension Fund to get his service credit records. *Id.* In response, he received

another letter that did not inform him how many service credits he had, even though he was

entitled "[b]y law" "the right to request [his] total service credit" each year. *Id.* In August 1994,

he created a letter with a flyer to inform members how to request from the Fund Manager

information on the number of service credits each participant had earned each year. *Id.* On

September 26, 1994, Raab, the Pension Fund legal counsel, sent Plaintiff a letter responding to

his flyer. *Id.* at ECF p. 5. Plaintiff also contends that he was not given a chance to submit a

written comment or request a hearing on pending exemptions proposed in 1990. *Id.* at ECF pp.

5, 18.

In support of his breach of fiduciary duty claim, Plaintiff also states that on September

12, 1994, the U.S. Department of Labor wrote a letter to the Pension Fund regarding a person

named Mrs. Rosa DeJesus who had been sick on disability for the past ten years without

receiving disability pension benefits. *Id.* According to Guzman, if he had not gone to the U.S.

Department of Labor to demand justice for her pension benefits, she would have never received

the pension benefit to which she was entitled. *Id.* Guzman also states that in 1996, the *New York

Daily News* published an article about the Pension Fund's money misuse and, in that same year,

he wrote a letter to the Pension Fund administrator about such misuse. *Id.*

### PROCEDURAL HISTORY

Guzman's *pro se* complaint was filed on March 7, 2022. Dkt. No. 1. The complaint was

brought under ERISA and was brought against the Defendants. *Id.*

On May 9, 2022, Defendants filed a motion to dismiss the complaint as well as a

memorandum of law in support of the motion. Dkt. Nos. 16–17. Guzman's response to the

motion to dismiss was filed on August 3, 2022.  Dkt. No. 22.  A reply memorandum of law was filed in support of the motion to dismiss on that same date.  Dkt. No. 21.

On January 26, 2023, the Court issued an order notifying that because both parties had submitted extrinsic documents in support of their positions, it intended to convert Defendants' motion to dismiss to a motion for summary judgment as courts often do with similar claims under ERISA.  Dkt. No. 23 at 1–2.  The Court provided notice of this intent due to Plaintiff's *pro se* status and asked if the parties needed any discovery or had any additional documents to submit in connection with the motion.  *Id.*

On February 24, 2023, Defendants responded to the Court's January 26 notice, noting that they had already "submitted the relevant portions of the Administrative Record in connection with their Motion to Dismiss" and therefore were not submitting additional evidence. Dkt. No. 24.  *Pro se* Plaintiff responded in a letter dated February 24, 2023, stating that he opposed the Court converting the Defendants' motion to dismiss to one for summary judgment. Dkt. No. 25.  Specifically, he noted "*Pro se* litigants like myself . . . we could doom a valid claim.  *Pro se* plaintiff does not know what are they obligated to say in the complaint about how specific allegations need to be.  More over the evidence to support the fact the plaintiff needs to prove might not be ready available to have meritorious claims without discovery over information relevant to the suit."  Dkt. No. 25 at 1–2.

## DISCUSSION

## I.     Whether to Convert the Motion to Dismiss

The heart of Plaintiff's complaint is that he was denied an actuarial increase in his pension benefits under ERISA.  In moving to dismiss the complaint, Defendants have submitted portions of the administrative record, Dkt. No. 24, and Plaintiff has submitted extrinsic evidence in opposition to the motion to dismiss, Dkt. No. 22.  As discussed *infra* Section II.B., while some

of the administrative record may be considered by the Court in deciding the motion to dismiss as either incorporated by reference into the complaint or integral to the claims asserted therein, other portions of the administrative record may not be considered, *see infra id*.

Thus, the question is whether Plaintiff's motion to dismiss is better treated as one for summary judgment. "Under Federal Rule of Civil Procedure 12(d), when parties present matters outside the pleadings on a motion to dismiss, the court must either decide the motion based on the complaint alone, without considering the additional material, or else convert the motion to one for summary judgment under Rule 56." *Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 357 (S.D.N.Y. 2016). "The ultimate decision of whether to convert a Rule 12(b)(6) motion into a Rule 56 motion is discretionary" and a court may convert only part of the Rule 12(b)(6) motion into a Rule 56 motion. *Id.*

Reasons exist to convert the present motion—at least with respect to the central claim for denial of benefits—to a motion for summary judgment. "[C]laims for benefits under ERISA are adjudicated on the basis of the administrative record" unless the district court finds good cause to consider evidence outside of that record. *Stolarik v. New York Times Co.*, 323 F. Supp. 3d 523, 539 (S.D.N.Y. 2018); *see DeFelice v. Am. Int'l Life Assurance Co. of N.Y.*, 112 F.3d 61, 66 (2d Cir. 1997); *Hughes v. Hartford Life & Accident Ins. Co.*, 507 F. Supp. 3d 384, 391 (D. Conn. 2020) ("When adjudicating claim disputes under an employee benefit plan, the court's review is ordinarily confined to the record that was originally before the claims administrator."). Plaintiff has received a copy of that administrative record. Dkt. No. 19. In addition, the Court provided notice that it intended to convert the motion to dismiss to one for summary judgment. Dkt. No. 23. The Court also provided Plaintiff the opportunity to present additional evidence in opposition to the motion for summary judgment and, if he felt that discovery was necessary to

support his claims, to show a "reasonable chance that the requested discovery will satisfy the good cause requirement." *Id.* Plaintiff did not make such a showing.[4]

Under similar circumstances, courts have converted motions for judgment or motions to dismiss on the basis of the administrative record in ERISA actions to motions for summary judgment. *See id.* (collecting cases); *see also Gannon v. Aetna Life Ins. Co.*, 2007 WL 2844869, at *6–7 (S.D.N.Y. Sept. 28, 2007) (same).

Yet, those cases often arise in the context of a plaintiff who is represented by an attorney. Here, Plaintiff is *pro se*. *Pro se* plaintiffs—who have no legal training—are particularly likely to benefit from the reasoned decision of a Court identifying the deficiencies in their complaints and explaining the relevant law so that they may submit a more successful complaint the second time around. For this reason, as a general rule, "a *pro se* plaintiff should get at least one chance to amend his or her complaint before" his case is dismissed with prejudice. *Steadman v. Mayo*, 2012 WL 1948804, at *5 (S.D.N.Y. Mar. 27, 2012), *report and recommendation adopted*, 2012 WL 1948862 (S.D.N.Y. May 30, 2012); *see Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) ("Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)).

---

[4] In his response to the Court's notice of its intention to convert the motion to dismiss, Plaintiff responded that "[t]here is a need to do discovery, to find out how many participants, who after they reach 65 years old and stop working, wait several years before apply[ing] for pension benefits." Dkt. No. 25 at 3. However, this discovery is not relevant to Plaintiff's claim that he was improperly denied an actuarial increase in his benefits under ERISA. That claim turns on whether Plaintiff was entitled to an actuarial increase in his benefits under the pension plan. *See infra* Section III.A. There is thus no reasonable chance that such discovery would satisfy the good cause requirement.

Because of Plaintiff's *pro se* status and because he has stated that he would like the opportunity to replead his case after this Court's decision, the Court exercises its discretion and declines to convert the present motion to dismiss to one for summary judgment. The motion shall be treated as a motion to dismiss. *See Abbey v. 3F Therapeutics, Inc.*, 2009 WL 4333819, at *5 (S.D.N.Y. Dec. 2, 2009) (noting that courts have complete discretion in deciding whether to convert a motion to dismiss to one for summary judgment).

## II.    Legal Standard

### A.    Motion to Dismiss

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept the material facts as alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) (citing *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994)). However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

The Court is obligated to construe *pro se* pleadings broadly and liberally, interpreting them so as to raise the strongest arguments they suggest. *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 146 (2d Cir. 2002); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000). However, while the Court construes *pro se*

pleadings liberally, this does not relieve *pro se* plaintiffs of the requirement that they plead enough facts to "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  Nor does it relieve them of the obligation to otherwise comply with the pleading standards set forth by the Federal Rules of Civil Procedure.  *See Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007).  "Thus, the Court's 'duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it.'"  *Davila*, 343 F. Supp. 3d at 266 (quoting *Geldzahler v. New York Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009)).

    **B.**    **What Material Can be Considered on the Motion to Dismiss**

In moving to dismiss, Defendants attach in support of their opening memorandum of law (1) a copy of the Summary Plan Description ("SPD") dated January 1, 2018, for the Pension Fund; and (2) portions of the administrative record, specifically a February 18, 2019, letter from Guzman to the Pension Fund, a February 25, 2019, letter from the Pension Fund to Guzman, a March 8, 2019 fax from Guzman to the Pension Fund, and a March 19, 2019 letter from Peter Goldberger to Guzman.  Dkt. No. 17-1.  Defendants also attach in support of their reply to the motion to dismiss additional excerpts of the administrative record, specifically (1) a document titled "Section 7.1.2 Suspension of Benefits"; (2) an email chain between the Pension Fund and the Department of Labor; and (3) a document titled "Explanation of Pension Benefit Building Service 32BJ Pension Fund Program A" dated January 29, 2019.  Dkt. No. 21-1 at 1–2. Plaintiff's opposition to the motion to dismiss also attaches various documents, including letters from the Pension Fund to himself as well as newspaper articles.  Dkt. No. 22.

"Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials."  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).  Courts

generally do not look beyond the facts stated on the face of the complaint, "documents appended to the complaint or incorporated in the complaint by reference" and "matters of which judicial notice may be taken." *Id.* (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)). "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents." *Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, 2022 WL 4815615, at *20 (S.D.N.Y. Sept. 30, 2022) (quoting *McKeefry v. Town of Bedford*, 2019 WL 6498312, at *3 (S.D.N.Y. Dec. 2, 2019)).

"Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted). It is not sufficient that the complaint makes mere reference to the document or offers limited quotations from it. *See Goel*, 820 F.3d at 559.[5] "In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Id.* (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)). The purpose of the rule is to prevent complaints from being invulnerable at the motion to dismiss stage purely "by clever drafting." *Id.* "Even where a document is considered integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist[s] no material disputed issues of fact regarding

---

[5] However, a plaintiff "cannot avoid the court's review of a communication 'as a whole' . . . by quoting only a portion of the communication and omitting the remainder." *Bongiorno v. Baquet*, 2021 WL 4311169, at *10 (S.D.N.Y. Sept. 20, 2021).

the relevance of the document." *Savides v. United Healthcare Servs., Inc.*, 2019 WL 1173008, at

*2 (S.D.N.Y. Mar. 13, 2019) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir.

2016)); *see Essilor International SAS v. J.P. Morgan Chase Bank, N.A.*, 2023 WL 35176, at *6

(S.D.N.Y. Jan. 4, 2023).

      With this in mind, the Court first concludes that it may rely on certain of the letters in the

administrative record that Defendants attached to its memorandum of law in support of its

motion to dismiss: specifically, the February 18, 2019 letter from Guzman to the Pension Fund,

the February 25, 2019 letter from the Pension Fund to Guzman, and the March 19, 2019 letter

from Peter Goldberger to Guzman.  Dkt. No. 17-1 at ECF pp. 41, 42, 44–45.  Each of these

letters—although not attached to Plaintiff's complaint—was incorporated by reference.  In the

complaint, Plaintiff details each of these letters in three separate paragraphs.  He includes the

date of the letter, to and from whom they were sent, and quotes in part from two of the letters and

summarizes the contents of the third.  Dkt. No. 1 at 9.  This constitutes a "clear, definite and

substantial reference to the[se] documents." *Lateral Recovery, LLC*, 2022 WL 4815615, at *20.

Plaintiff also does not dispute the authenticity, accuracy, or relevancy of them.  The Court

therefore may consider them in ruling on the instant motion.  *See Zeuner v. Suntrust Bank Inc.*,

181 F. Supp. 3d 214, 219 (S.D.N.Y. 2016) (looking to "Claim Denial Letters and the Appeal

Denial Letters" in deciding motion to dismiss where "Complaint relies heavily" on the

documents and "neither party disputes the accuracy or authenticity of those documents").

      The Court, however, cannot consider the March 8, 2019 fax from Guzman to the Pension

Fund nor any of the documents Defendants attach to their reply brief.  Dkt. No. 17-1 at ECF

p. 43; Dkt. No. 21-1.  Guzman does not attach any these documents to his complaint, nor does he

make reference to them or rely on their terms.  Dkt. No. 1.  It would also be unfair for this Court

to rely on documents Defendants submitted only in support of their reply brief as Plaintiff has not had an opportunity to respond to them or to state whether he disputes their authenticity, accuracy, or relevancy.

A trickier question arises as to the SPD dated January 1, 2018 for the Pension Fund.  Dkt. No. 17-1 at ECF pp. 3–39.  Although Plaintiff references the SPD in the complaint and states that it serves as the "plan participants' primary source of information concerning employee benefits," he does not specifically refer to the 2018 version of the SPD.  Dkt. No. 1 at ECF p. 9.  To the contrary, he specifically references and then quotes from the January 2002 version of the SPD. *Id.* at ECF pp. 9–10.  The 2018 SPD cannot therefore be said to be incorporated by reference.

That the 2018 SPD is not specifically named or incorporated by reference, however, does not prevent this Court from considering it.  As the Second Circuit stated, "Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on the motion."  *Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*, 494 F. App'x 153, 156 (2d Cir. 2012) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991)); *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 201 (S.D.N.Y. 2008) ("Where, as here, the pleader has notice of documents that are integral to its claims, the pleader may not avoid the Court's consideration of such documents simply because they contain material adverse to their claims.").

Here, Plaintiff had notice of the 2018 SPD.  In his 2018 letter to the Fund in which he first contested the calculation of his monthly pension benefits, Plaintiff explicitly referenced that he was entitled to a monthly pension benefit of $2,462.59 under the 2018 SPD.  Dkt. No. 17-1 at

ECF p. 41.  He also quoted from page 33 of that document, making clear that he had access to it

and considered it the version of the SPD that governed his request for benefits.  *Id.*

The 2018 SPD is also integral to his claim and was relied on by Plaintiff in making that

claim, even if it is not specifically quoted in his original complaint.  In this action, Plaintiff

claims that the administrator's decision to deny his additional monthly benefits was incorrect.

That decision, importantly, was based on a provision in the 2018 SPD, not the 2002 SPD.  Dkt.

No. 17-1 at ECF pp. 20, 44.  Plaintiff does not appear to contest that the decision to deny his

benefits was based on this provision of the pension plan detailed in the 2018 SPD.  Dkt. No. 22

at ECF p. 2.  Instead, he claims that the provision was improperly interpreted by Defendants and

also argues, apparently in the alternative, that it was error for the Defendants to apply the 2018

version of the SPD to his claims.  *Id.* at ECF p. 8.  In his opposition brief to the motion to

dismiss, Plaintiff also references and quotes from the 2018 SPD and attaches a portion of the

document to his brief.  Plaintiff's claim for improper denial of benefits under ERISA thus

"stands or falls" on the 2018 SPD and whether the Appeals Committee correctly determined that

it applied and how it applied to Plaintiff's claim for monthly benefits.  *Goel*, 820 F.3d at 559.

The 2018 SPD is therefore integral to Plaintiff's claims and Plaintiff cannot avoid consideration

of it at the motion to dismiss stage merely by omitting any reference to it in his original

complaint and instead referencing a prior version of the SPD that presumably does not contain

the provision at issue in this lawsuit.  *See Ginx, Inc. v. Soho All.*, 720 F. Supp. 2d 342, 352

(S.D.N.Y. 2010) ("When plaintiffs fail to include any reference to documents that they knew of

that are integral to their claim, there is no need for the court to convert the motion to a summary

judgment motion in order to take them into account.  'Plaintiffs' failure to include matters of

which as pleaders they had notice and which were integral to their claim—and that they

apparently most wanted to avoid—may not serve as a means of forestalling the district court's

decision on the motion.'" (quoting *Cortec*, 949 F.2d at 44)); *see also Sunwoo v. JPMorgan*

*Chase & Co.*, 2021 WL 2443814, at *6 (S.D.N.Y. June 15, 2021) ("[W]here the language of a

complaint is contradicted by a written document that plaintiff artfully conceals from a court, the

court may consider such a document on a motion to dismiss.").

      That the 2018 SPD is integral to Plaintiff's complaint and therefore may be considered by

the Court in deciding the instant motion to dismiss is consistent with prior ERISA decisions.  In

the ERISA context, courts routinely hold that plan documents, such as the SPD here, are integral

to the allegations in the complaint.  *See Massimino v. Fid. Workplace Servs., LLC*, 2016 WL

6893609, at *4 (W.D.N.Y. Nov. 23, 2016), *aff'd*, 697 F. App'x 85 (2d Cir. 2017) (finding that

plan documents were essential to plaintiff's claims and thus could be considered at motion to

dismiss stage); *Neurological Surgery, P.C. v. Travelers Co.*, 243 F. Supp. 3d 318, 325 (E.D.N.Y.

2017) ("When deciding a motion to dismiss, a court may consider not only the allegations in the

complaint, but also documents that are incorporated by reference or are otherwise integral to the

allegations in the complaint, such as ERISA plan documents."); *Guo v. IBM 401(k) Plus Plan*,

2016 WL 4991666, at *1 n.1 (S.D.N.Y. Sept. 15, 2016); *Forgione v. Gaglio*, 2015 WL 718270,

at *17 (S.D.N.Y. Feb. 13, 2015) ("Because the Plan document and adoption agreement are

undoubtedly integral to the Complaint, the Court may consider these materials in connection

with the instant motions."); *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 568 n.3 (S.D.N.Y.

2012) ("The Court can properly consider the Plan and the Summary Plan Description on this

motion to dismiss because they are essential to the plaintiffs' ERISA claims and incorporated by

reference into their complaint."); *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770

F. Supp. 2d 497, 545 n.22 (E.D.N.Y. 2011) (Bianco, J.) ("Although the Court typically may not

look beyond the complaint in ruling on a motion to dismiss, the Court may consider the plan documentation submitted by defendants here, because the plaintiffs' claims are based upon the ERISA plans and the plan documents plainly are integral to plaintiffs' complaint.").

Plaintiff also, as noted, references the 2018 SPD in his opposition brief, quotes from it, and incorporates part of the document by reference.  Plaintiff, accordingly, does not appear to dispute its authenticity or accuracy nor does Plaintiff detail any material *disputed issues of fact* regarding the relevance of the document.[6]  *See Savides*, 2019 WL 1173008, at *2.  The Court therefore will consider it in ruling on the instant motion to dismiss.

Finally, the Court will consider the extrinsic documents that Guzman, proceeding *pro se*, has attached to his opposition papers in ruling on the present motion to dismiss.  *See Dawkins v. Biondi Educ. Ctr.*, 2017 WL 325262, at *1 n.1 (S.D.N.Y. Jan. 20, 2017); *Dawkins v. Biondi Educ. Ctr.*, 164 F. Supp. 3d 518, 524 (S.D.N.Y. 2016) ("In deciding a motion to dismiss a *pro se* complaint, it is appropriate to consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint, including documents that a *pro se* litigant attaches to his opposition papers." (cleaned up)); *Agu v. Rhea*, 2010 WL 5186839, at *4 (E.D.N.Y. Dec. 15, 2010) ("On a motion to dismiss, the Court can consider documents that a *pro se* litigant attaches to his opposition papers.").

### C.   What Claims Are Alleged

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).  Construed liberally, Guzman's complaint raises the following claims under ERISA: (1) improper denial of an actuarial interest in his benefits under

---

[6] Plaintiff does, however, dispute the administrator's legal conclusion that the provision in the 2018 SPD applied to his claim.

29 U.S.C. § 1132(a)(1)(B); (2) breach of fiduciary duty under either 29 U.S.C. § 1132(a)(2) or 29 U.S.C. § 1132(a)(3); (3) retaliation under 29 U.S.C. § 1140, due to his dissent activities; and (4) failure to provide him with a suspension notice.  *See generally* Dkt. No. 1.

In Guzman's opposition to the motion to dismiss, he also raises a claim under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*., stating that the amended plan should not discriminate against participants like himself who continue to work after Normal Retirement Age.  Dkt. No. 22 at 2.  The Court will also address this claim. Although "[a] *pro se* plaintiff may not raise 'entirely new' causes of action for the first time in his opposition papers," the "Court may consider new claims appearing for the first time in briefing if 'the claims could have been asserted based on the facts alleged in the complaint.'" *Davila*, 343 F. Supp. 3d at 267 (quoting *Vlad-Berindan v. MTA New York City Transit*, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014) (Sullivan, J.)).  This claim clearly falls into this category of new claims that may be addressed.  It is based on the same facts alleged in his original complaint—*i.e.*, that the administrators denied his claim for increased benefits because he worked past the age of sixty-five.[7]

### III.    Analysis of Claims

#### A.    Denial of Benefits Claim Under Section 502(a)(1)(B).

Plaintiff first brings a claim for improper denial of an actuarial increase in his benefits under 29 U.S.C. § 1132(a)(1)(B).  Dkt. No. 1.  This claim can be broken down into two parts. First, he claims that he was denied a full and fair administrative appellate hearing as to this

---

[7] Plaintiff appears to raise new claims in his letter to the Court as to whether the instant motion to dismiss should be converted into a motion for summary judgment.  Dkt. No. 25.  Specifically, he appears to argue that Pension Fund's decision to amend the plan around 2005 to add a provision on suspension of benefits constituted a breach of fiduciary duty.  *Id.* at 4.  The Court will not address any new claims raised in this letter to the Court as Defendants did not have a chance to address them and Plaintiff will have an opportunity to replead his claims.

claim.  And, second, he claims that he was entitled under the pension plan (the "Plan") to an actuarial increase in his benefits for the time period that he delayed in collecting benefits after he turned sixty-five years old.  Because the issue of whether Plaintiff received a full and fair appellate hearing determines the standard of review for the denial of benefits claim, the Court will address this procedural issue first and then turn to the substantive one.

### 1.      Applicable Law and Standard of Review

ERISA provides that a person denied benefits under an employee benefits plan may challenge that denial in federal court.  29 U.S.C. § 1132.  "Although it is a comprehensive and reticulated statute, ERISA does not set out the appropriate standard of review for actions . . . challenging benefit eligibility determinations." *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 108–09 (1989) (citation and quotation marks omitted).  In *Firestone Tire*, the Supreme Court held that a challenge to the denial of benefits under an ERISA-covered employee benefit plan "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case an arbitrary and capricious standard applies.  *Id.* at 115.  "But even when the plan confers such discretion, a court reviews de novo those cases in which a plan administrator fails to comply with the Department of Labor's claims procedure regulations, unless the failure to do so was inadvertent and harmless." *Hughes v. Hartford Life & Accident Ins. Co.*, 2021 WL 1165430, at *6 (D. Conn. Mar. 25, 2021); *see also In re DeRogatis*, 904 F.3d 174, 187 (2d Cir. 2018).

Here, there appears to be no dispute that the Plan grants the Board of Trustees and its Appeals Committee discretionary authority to interpret the Plan and documents related to the Plan.  Dkt. No. 17 at 5; Dkt. No. 22 at 2; *see also Suarato v. Bldg. Servs. 32BJ Pension Fund*, 554 F. Supp. 2d 399, 418 (S.D.N.Y. 2008) ("The Second Circuit and the district courts within the

Circuit have repeatedly found that Building Services 32B–J's Pension and Health Funds grant the Trustees discretionary authority to determine eligibility and to construe Plan terms, triggering the arbitrary and capricious standard of review." (collecting cases)).

A review of the 2018 SPD also supports that the Plan granted the Board of Trustees and their duly authorized designees, including the Appeals Committee, unfettered discretion to make benefit determinations decisions and to construe the terms of the plan.  Dkt. No. 17-1 at ECF p. 27.  The 2018 SPD provides the Board of Trustees and the Appeals Committee with "sole and absolute discretionary authority" to "formulate, interpret and apply rules, regulations and policies necessary to administer the Plan in accordance with the terms of the Plan"; "decide questions, including legal or factual questions, relating to the calculation and payment of benefits under the Plan"; "resolve and/or clarify any ambiguities, inconsistencies and omissions arising under the Plan"; and "take all actions and make all decisions with respect to eligibility for, and the amount of, benefits payable under the Plan."  *Id.*  Because the 2018 SPD clearly and unequivocally grants the trustees sole discretion to consider factual and legal questions related to benefit eligibility, it appears that a deferential arbitrary and capricious standard of review applies absent a showing that the Pension Fund failed to comply with the Department of Labor's claims procedure regulations.

For this reason, the Court turns to the question of whether Plaintiff has adequately stated a claim that the Pension Fund did not comply with the Department of Labor's claims procedure regulations by denying him a full and fair appellate hearing.

> **2.      Application**

> **a.      Denial of Full and Fair Appellate Hearing**

Plaintiff states that he was denied a full and fair appellate hearing on the basis that he was not provided sufficient information as to why he was only entitled to a $1,317 monthly pension

benefit as opposed to the $2,376 pension benefit to which he believes he is entitled.  Dkt. No. 22 at 2, 6–7.  He notes that in response to his letter to the Pension Fund from February 25, 2019, stating that he disagreed with his estimated pension benefits, the Pension Fund sent him a response informing him of the date of the Appeals Committee meeting and advising him that he was not required to be present at the hearing, and that it did not provide "the specific reasons" or "refer[] to the specific Plan provisions on which their decision was based."  *Id.*  As a result, he notes that he went into the hearing "blind" and was not able to prepare a response on why the provision of the 2018 SPD titled "SUSPENSION OF PENSION BENEFITS" did not apply to him.  *Id.*

In response, Defendants claim that the administrative record reflects that Plaintiff was informed before the hearing that he was not entitled to an actuarial increase in his benefits because his pension benefits were suspended for the time that he continued working after the age of sixty-five.  In support of this argument, Defendants cite to Exhibit 4 of their reply brief which is an email chain between the Pension Fund and the Department of Labor.  Dkt. No. 21 at 6.  In addition, they note that Plaintiff "was fully on notice of the suspension rule as it is explained in the SPD."  *Id.* at 6.

"A key component of ERISA's statutory plan is Section 503, which requires that, '[i]n accordance with regulations of the [Department of Labor], every employee benefit plan shall' do two things."  *Halo v. Yale Health Plan, Dir. of Benefits & Recs. Yale Univ.*, 819 F.3d 42, 48 (2d Cir. 2016) (quoting 29 U.S.C. § 1133).  First, the plan must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant."  29 U.S.C. § 1133(1).  Second, the plan must "afford a reasonable opportunity to

any participant whose claim for benefits has been denied for a full and fair review by the
appropriate named fiduciary of the decision denying the claim." *Id.* § 1133(2).

The purpose of the first requirement is "to provide claimants with enough information to
prepare adequately for further administrative review or an appeal to the federal courts." *Nerys v.
Bldg. Serv. 32B-J Health Fund*, 2004 WL 2210256, at *8 (S.D.N.Y. Sept. 30, 2004) (quoting
*Juliano v. Health Maintenance Organization of New Jersey, Inc.*, 221 F.3d 279, 287 (2d Cir.
2000)).  The applicable regulations define what is required under this statutory provision.  They
state that the "notification shall set forth, in a manner calculated to be understood by the
claimant:

(i) The specific reason or reasons for the adverse determination;

(ii) Reference to the specific plan provisions on which the determination is based;

(iii) A description of any additional material or information necessary for the
claimant to perfect the claim and an explanation of why such material or
information is necessary; [and]

 (iv) A description of the plan's review procedures . . . including a statement of the
claimant's right to bring a civil action . . . following an adverse benefit
determination on review.

29 C.F.R. § 2560.503-1(g).  The 2018 SPD echoes this requirement, stating that "[i]f your
application (claim) for benefits is denied, in whole or in part, the Plan will provide you with a
written notice informing you of: the specific reasons for the Plan's determination and references
to the specific Plan provisions on which the determination is based, [and] a description of any
additional material or information needed to complete your claim (including an explanation of
why the information is needed."  Dkt. No. 17-1 at ECF p. 23.

As to the second requirement, the requirement of a full and fair review extends through
the claimant's administrative appeal.  29 C.F.R. § 2560.503-1(h).  "As relevant here, the
regulation creates three related rights for a claimant during the appeal process." *Hughes v.*

*Hartford Life & Accident Ins. Co.*, 368 F. Supp. 3d 386, 393 (D. Conn. 2019).  Those rights are

that the plan must:

> (i) Provide claimants at least 60 days following receipt of a notification of an adverse benefit determination within which to appeal the determination;
>
> (ii) Provide claimants the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits;
>
> (iii) Provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section.

*Id.*

Here, although Plaintiff seems to frame his argument as denial of the right to a full and

fair appellate procedure, it is better characterized as claim under the first requirement of Section

503.  Plaintiff claims that, prior to his appeal, he was never presented with the requisite

information as to why his claim for benefits in the amount of $2,395.97 was denied and thus was

unable to "prepare adequately for further administrative review."  *Nerys*, 2004 WL 2210256, at

*8 (citation omitted).  Specifically, he notes that he was never provided with the "specific

reasons" or information about the "specific Plan provisions" as to why the Pension Fund

determined he was only entitled to monthly pension benefits of $1,317.  Dkt. No. 1 at ECF p. 9.

As a result, he went into the hearing on his appeal "blind" and did not prepare himself regarding

the rules concerning suspension of benefits as he did not "know [his] benefit was suspended" for

the years he worked after turning sixty-five years old.  Dkt. No. 22 at ECF p. 7.  These

allegations state a claim for denial of an adequate notice under Section 503.  Plaintiff was

entitled to an explanation of the specific reasons for the adverse determination as well as the

relevant Plan provisions underlying the decision under the applicable statute, regulations, and the

2018 SPD.  Thus, to the extent that Plaintiff did not receive them, the denial of Plaintiff's claim

must be reviewed by this Court de novo unless Defendants can show that its failure to comply with these requirements "was inadvertent and harmless."[8]  *Hughes*, 2021 WL 1165430, at *6.

In reaching this conclusion, the Court rejects Defendants' argument that Exhibit 4 of the administrative record requires the Court to dismiss this procedural claim as Exhibit 4 reflects that Plaintiff was informed of the reason for the denial of his claim for benefits.  Dkt. No. 21 at 6.  Exhibit 4 is an email chain between the Pension Fund and the Department of Labor, Dkt. No. 21-1 at ECF pp. 1, 7–9, and was not one of the documents that this Court found that it could consider at the motion to dismiss stage, *see supra* Section II.B.  Accordingly, the Court does not consider it in deciding whether to dismiss Plaintiff's claim under Rule 12(b)(6).

Defendants also state that Plaintiff's claim fails as he "was fully on notice of the suspension rule as it is explained in the SPD."  Dkt. No. 21 at 6.  However, the 2018 SPD and relevant regulations do not merely require that Plaintiff be broadly aware of the rule underlying the denial of his claim.  Instead, they require that Plaintiff be made aware of the "specific reasons for the Plan's determination" and be provided with "references to the specific Plan provisions on which the determination is based."  Dkt. No. 17-1 at ECF p. 23; *see also* 29 C.F.R. § 2560.503-1(g).  That Plaintiff could have reviewed the Plan and come to the conclusion that the suspension rule in the SPD was the reason for the denial of his claim is plainly insufficient.

### b.    Interpretation of the Plan

The Court next turns to Plaintiff's claim that he was improperly denied an actuarial increase in his benefits.  Plaintiff's primary contention is that he is entitled an increase in his monthly pension under the Plan as a result of the fact that he deferred collecting his pension payment for several years after he turned sixty-five.  Specifically, he claims that he was

---

[8] The Second Circuit has stated that a participant is not entitled to civil penalties for a plan's failure to comply with procedural regulations.  *See Halo*, 819 F.3d at 61.

guaranteed an actuarial increase under the SPD, which he states is the "plan participant's primary source of information concerning employee benefits." Dkt. No. 1 at 2.  In support of this argument, he cites to page 14 of the January 2002 Building Service 32BJ Pension Fund Summary Plan Description which, as noted earlier, *supra* at p. 4, states under the title "WHEN PENSION BENEFITS BEGIN":

> Pension benefits are payable on the first day on [sic] the month following the date a person has fulfilled the eligibility rules for such benefit and proper application is made to, and received by the Fund Office.  You must begin to receive your benefit on April 1 of the first calendar year after you reach the age of 70 1/2, even if you are still working in covered employment.  If your benefit begins after you reach Normal Retirement Age (which for most participants is age 65), the amount of your benefit will be actuarially increased to reflect the delay in commencement.

*Id.* at 3.  Plaintiff states that because he did not seek his benefits at his Normal Retirement Age of sixty-five but waited until his required beginning date of April 1, 2019 to collect his benefit, his benefits must be actuarily increased to reflect the delay in commencement.  *Id.* at 2–3.  Plaintiff also notes that none of the articles of the CBA state that after a person reaches the age of sixty-five years old, their job becomes "disqualifying employment."  *Id*. at 10.

In moving to dismiss, Defendants state that Guzman "cannot rely on the long-outdated 2002 SPD that has no applicability in this case." Dkt. No. 17 at 8.  Instead, they state that the applicable SPD is the one dated January of 2018, which formed the basis of the Appeals Committee's decision and which Plaintiff himself quoted from in his appeal to the Committee. *Id.*  Defendants note that the 2018 SPD provides that no increase in benefits will be provided when the participant continues working full time in the building industry after age sixty and, point out that here Guzman admits to continuing to work in the New York City building service industry throughout the period from when he turned sixty-five in 2012 to when he was required to commence his pension in April 2019.  *Id*. at 11.

This issue requires the Court to address whether, even assuming a de novo standard of review applies, Plaintiff has stated a plausible claim for improper denial of benefits under the Plan.  To answer this question, the Court first must determine whether Plaintiff has stated a viable claim that the Pension Fund administrators erred in looking to the 2018 SPD in determining his entitlement to benefits.

The 2018 SPD provides that it "describes the provisions of the Plan as amended through January 1, 2018, and generally applies to pension benefits that have not yet begun to be paid." Dkt. No. 17-1 at ECF p. 6.  It further notes that "[i]f you are already receiving benefits, this booklet does not apply to you and you should refer to the Summary Plan Description and official Plan documents in effect at the time you stopped working in Covered Employment . . . to determine your rights under the Plan."  *Id.*  Here, there is no dispute that Plaintiff had neither begun to collect his benefits nor stopped working in Covered Employment prior to January 1, 2018.  Dkt. No. 22 at 8 (Plaintiff's opposition brief in which he admits that he did not begin to receive benefits until April 1, 2019, and has not stopped working even to the present).  Thus, under the plain language of the 2018 SPD, the 2018 SPD appears to "appl[y]" to Plaintiff's payment of benefits beginning on April 1, 2019.  Dkt. No. 17-1 at ECF p. 6.[9]

Plaintiff provides no explanation as to why the 2002 SPD would govern his claim, but he nonetheless argues that the 2018 SPD does not apply to him because while he began to receive benefits on April 1, 2019, he has not stopped working nor retired.  Dkt. No. 22 at 8.  This argument is unavailing.  The 2018 SPD provides that it "generally applies" to all pension

---

[9] As previously noted, *see supra* pp. 13–14, Plaintiff himself, prior to the instant lawsuit, appears to have believed that the 2018 SPD was the operative SPD, as he referred to it in his letter to the Pension Fund concerning the monthly pension benefits he was due.  *See* Dkt. No. 17-1 at ECF p. 41.

benefits that have not yet begun to be paid and only mentions the date at which a person stopped working in the context of participants who are "already receiving benefits." Dkt. No. 17-1 at ECF p. 6. And, as noted, there is no dispute that Plaintiff was not "already receiving benefits" prior to January 1, 2018; thus, the date that Guzman stopped working is irrelevant to determining whether the 2018 SPD applies.[10]  Plaintiff has therefore not plausibly stated a claim that the Appeals Committee erred in looking to the 2018 SPD in determining whether Plaintiff was entitled to an actuarial increase in his benefits.

That the 2018 SPD governs Plaintiff's entitlement to benefits forecloses his argument that the Plan entitled him to an increase in his monthly pension for the years he deferred collecting his pension between the years of sixty-five and seventy-two. The 2018 SPD provides that "[i]f, after terminating Covered Employment, you wait to begin your pension until after Normal Retirement Age, you will receive a monthly pension that is increased to reflect the period after your Normal Retirement Age during which you were not receiving benefits." Dkt. No. 17-1 at ECF p. 20. It continues that the "increase will be 1% for each month your benefit was postponed after your Normal Retirement Age through age 70, and 1.5% for each month your benefit was postponed thereafter." *Id.*  Normal Retirement Age is later defined as sixty-five or the participant's age on the fifth anniversary of their participation in the Plan, whichever is later. *Id.* at ECF p. 34. However, the 2018 SPD imposes an important restriction on this general provision. It states: "*No increase will apply to months for which your benefit was suspended.*" *Id.*  It then provides in a section titled "Reemployment After Retirement":

---

[10] The Court is also skeptical of Plaintiff's proffered reading of this latter provision related to participants who are already receiving benefits. Under such an interpretation, no SPD would govern the pension payout for participants who had already received benefits but had not retired. Such an interpretation would lead to unreasonable results. The Court, however, need not reach this issue as this particular provision does not apply for the reasons discussed.

> After Normal Retirement Age, but before the calendar year following the year in which you reach age 70½: Pension payments will be suspended for each month in which you work 40 or more hours in Disqualifying Employment.

*Id.* at ECF p. 18.  This provision seems to refer to the Required Beginning Date which is "April 1 of the calendar year following the calendar year in which you turn 70½." *Id.* at ECF p. 34.  In other words, the 2018 SPD provides that working in Disqualifying Employment after retirement and prior to the Required Beginning Date will result in a suspension of the pension.

There is no dispute here that Plaintiff continued to work in Disqualifying Employment after his Normal Retirement Age of sixty-five and prior to the Required Beginning Date. Disqualifying Employment is any category "of work in the building service industry . . . within the boroughs of Manhattan, Queens, Brooklyn and Staten Island, whether or not for a Contributing Employer," *id.* at ECF p. 33, and the "Required Beginning Date" "means the April 1 of the calendar year following the calendar year in which you turn age 70½," *id.* at ECF p. 34. Plaintiff admits in his complaint and his opposition to the motion to dismiss that he continued to work past the age of sixty-five in the New York City building service industry and for the Union. Dkt. No. 1 at ECF p. 10; Dkt. No. 22 at 3.

Plaintiff, however, argues that the suspension of benefits provision does not apply to him because he never actually retired from his position, and, under the plain language of the provision, suspension only occurs when a participant works in Disqualifying Employment *"after retirement*." Dkt. No. 22 at 3.  Although Plaintiff is correct that the title of the relevant section is titled "Reemployment After Retirement" and several other provisions discuss this suspension rule in the context of someone who retires and then resumes employment, this does not mean that the scope of the suspension rule is confined to this set of circumstances.  The heading of a provision is not determinative of the scope of a contractual provision.  *See Canada v. Am. Airlines, Inc. Pilot Ret. Ben. Program*, 2010 WL 4877280, at *14 (M.D. Tenn. Aug. 10, 2010),

*aff'd as modified*, 572 F. App'x 309 (6th Cir. 2014) ("Even though Section 6.10 is titled

"Suspension of Benefits Upon Re-Employment of Retired Members," that heading is not

controlling."); *Swiss Bank Corp. v. Dresser Indus., Inc.*, 942 F. Supp. 398, 401 (N.D. Ill. 1996)

("[T]he descriptive heading, though clumsily drafted, is not part of the contract and its meaning

is not controlling.").  That is particularly true where clear language within that provision applies

to the set of circumstances at issue.  As previously noted, the 2018 SPD expressly provides:

"After Normal Retirement Age, but before the calendar year following the year in which you

reach age 70½: Pension payments will be suspended for each month in which you work 40 or

more hours in Disqualifying Employment."  Dkt. No. 17-1 at ECF p. 18.

 Further supporting this interpretation that pension benefits may be suspended through

continued employment—as opposed to resuming employment after retirement—is a provision in

the 2018 SPD that discusses Service Credits.  It provides:

> Any additional Service Credit you earn after Normal Retirement Age will be
> determined at the end of each calendar year and will be payable effective on the
> January 1 following the end of the calendar year in which you earned the additional
> Service Credit, provided payment of benefits is *not suspended (that is, for the
> period after your Normal Retirement Age and before you reach your Required
> Beginning Date, you work less than 40 hours a month in Disqualifying
> Employment).*

*Id.* at ECF p. 18 (emphasis added).  According to this provision, payment of benefits is *not*

suspended if one works fewer than forty hours a month in Disqualifying Employment during the

time between the Normal Retirement Age and the Required Beginning Date.  It thus conveys that

the contrary is also true—that payment of benefits will be suspended if one works forty or more

hours a month in Disqualifying Employment during the time between the Normal Retirement

Age and the Required Beginning Date, regardless of whether one retired during that period.

 This broader interpretation of when pension benefits may be suspended—which does not

turn on exactly whether the participant retired and then resumed work or continued to work

throughout—also makes sense.  Under Plaintiff's interpretation, a participant's retirement benefits could be suspended for several years based purely on the fact that the participant had retired for a single week after turning sixty-five and thereafter resumed employment, while another participant who did not retire for a week, but was in all other respects identical, would not have her retirement benefits suspended.

For these reasons, the Court finds that, even applying de novo review, Plaintiff has not plausibly stated a claim that the Appeals Committee erred in holding that Plaintiff was not entitled to an actuarial increase in his monthly pension.  The Court also rejects Plaintiff's claim that the Appeals Committee's decision was erroneous because the CBA did not state that after participants reached the age of sixty-five years old, holding a job would become "disqualifying employment."  Dkt. No. 1 at 10.  It is the governing Plan document and the SPD that "set[] forth plan terms," not the CBA.  *Silverman v. Teamsters Loc. 210 Affiliated Health & Ins. Fund*, 761 F.3d 277, 286 (2d Cir. 2014).  Thus, the fact that the CBA did not set forth this specific detail about the Plan is not determinative.  Plaintiff's denial of benefits claim is thus dismissed.

**B.      Breach of Fiduciary Duty Claim**

Plaintiff also brings a claim against Defendants for breach of fiduciary duty based on the denial of the full amount of Plaintiff's claim for benefits.[11]  Dkt. No. 1 at ECF p. 10.  In

---

[11] In his opposition brief, Plaintiff also appears to claim that various acts of the Pension Fund occurring between 1990 and 1996 constituted a breach of fiduciary duty.  Dkt. No. 22 at ECF pp. 4–6; *see also supra* pp. 4–5 (detailing these allegations).  However, Plaintiff's claim for breach of fiduciary duty based on these acts is barred by the applicable statute of limitations in ERISA § 413.  *See L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, 710 F.3d 57, 67 (2d Cir. 2013); *see also Rapp v. Henkel of Am.*, 2019 WL 4509095, at *5 (D. Conn. Sept. 18, 2019).  It provides:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--
>> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or . . .

response, Defendants move to dismiss the claim as duplicative of Plaintiff's claim for denial of benefits.  Dkt. No. 17 at 11.

Breach of fiduciary duty claims may be brought under ERISA §§ 502(a)(2) and (a)(3)(B).  *See* 29 U.S.C. § 1132(a)(2)–(3); *Klecher v. Metro. Life Ins. Co.*, 331 F. Supp. 2d 279, 286 (S.D.N.Y. 2004).  A claim brought under § 502(a)(2) seeks "appropriate relief" on behalf of the plan for breach of fiduciary duty based on "losses to the plan."  29 U.S.C. § 1132(a)(2); *Id*. § 1109.  Claims pursuant to this provision "may not be made for individual relief, but instead are 'brought in a representative capacity on behalf of the plan.'"  *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, 710 F.3d 57, 65 (2d Cir. 2013) (citation omitted).

Here, Plaintiff seeks individual relief and does not seek relief on behalf of the Plan for losses to the Plan.  As a result, to the extent he is able to obtain relief at all, he must seek it under § 502(a)(3)(B).  Under this provision, a beneficiary may sue to obtain "appropriate equitable relief" on his or her own behalf for breach of fiduciary duty.  *See Klecher*, 331 F. Supp. 2d at 286 (quoting 29 U.S.C. § 1132(a)(3)(B)); *see Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 89 (2d Cir. 2001).  Section 502(a)(3) states that a civil action may be brought by a beneficiary of an ERISA plan "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."  29 U.S.C. § 1132(a)(3).  "Money damages are generally unavailable pursuant to § 502(a)(3)."  *Harrison v. Metro. Life Ins. Co.*, 417 F. Supp. 2d 424, 433 (S.D.N.Y. 2006).

---

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation.
29 U.S.C. § 1113.  This statute of limitations has long since passed with respect to conduct that occurred almost thirty years prior.

The availability of relief under § 502(a)(3)(B) depends on whether the plaintiff has another adequate remedy available.  In *Varity Corporation v. Howe*, the Supreme Court held that § 502(a)(3)(B) acted as a "'catchall' provision" or a "safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy."  516 U.S. 489, 512 (1996).  Thus, the Supreme Court implied that where § 502 otherwise provided an adequate relief for an injury, there "will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'"  *Id.* at 515.

In accordance with this general guidance, post-*Varity*, courts generally have dismissed breach of fiduciary duty claims for monetary relief under § 502(a)(3)(B) where the claim "f[ell] comfortably within the scope of § 502(a)(1)(B)."  *Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006); *see LI Neuroscience Specialists v. Blue Cross Blue Shield of Fla.*, 361 F. Supp. 3d 348, 357–58 (E.D.N.Y. 2019) (Bianco, J.) (dismissing claim for equitable relief under § 502(a)(3) "because essence of the claim is one for damages for alleged underpayment"); *Keir v. Unumprovident Corp.*, 2010 WL 3566878, at *8 (S.D.N.Y. Sept. 14, 2010) (same); *see also Amron v. Yardain Inc. Pension Plan*, 2019 WL 6619107, at *9 (S.D.N.Y. Dec. 5, 2019) ("Plaintiff seeks solely monetary damages identical to those sought in the claim under ERISA § 502(a)(1)(B), and therefore a claim brought under § 502(a)(3) would fail.").

ERISA § 502(a)(1)(B) "specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims."  *Varity*, 516 U.S. at 512.  "ERISA § 502(a)(1)(B) permits a plan participant or beneficiary to bring a civil action 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'"  *Keir*, 2010 WL 3566878, at *8 (citation omitted).

For example, in *Frommert*, the Second Circuit upheld the decision of a district court to dismiss a claim under § 502(a)(3)(B) where the plaintiffs "ultimately [sought] money damages through recalculation of their pension benefits." 433 F.3d at 269–70. Citing *Varity*, the court noted that relief under this subsection was not available because "adequate relief" was available under § 502(a)(1)(B) and thus there "is no need on the facts of this case to also allow equitable relief under § 502(a)(3)." *Id.* at 270. The Circuit thus concluded "[w]hile the plaintiffs seek to expand the nature of their claim by couching it in equitable terms to allow relief under § 502(a)(3), the gravamen of this action remains a claim for monetary compensation and that, above all else, dictates the relief available." *Id.*

In the instant matter, as in *Frommert*, the essence of Plaintiff's claim is one for monetary compensation under § 502(a)(1)(B). Plaintiff's breach of fiduciary duty claim is premised on identical facts as his denial of benefits claim under § 502(a)(1)(B). "Plaintiff seeks solely monetary damages" apparently "identical to those sought in the claim under ERISA § 502(a)(1)." *Amron*, 2019 WL 6619107, at *9. Thus, to the extent that Plaintiff's claims are successful, adequate relief will be available under § 502(a)(1)(B) and there "is no need on the facts of this case to also allow equitable relief under § 502(a)(3)." *Frommert*, 433 F.3d at 270. The Court therefore dismisses this claim.

### C.     ADEA Claim

In his opposition to the motion for summary judgment, Plaintiff appears to assert a claim under the ADEA, stating that the Plan "should not discriminate against participants, like myself, who continue to work after Normal Retirement Age, 65 years old, because according to the Mortality Table those participants have a shorter life span." Dkt. No. 22 at 2. In response, Defendants contend that he cannot bring such a claim because he was not "an employee of the

Pension Fund" and "has pled no facts that would plausibly support an inference that any action of the Fund was motivated by age discrimination."  Dkt. No. 21 at 6.

As an initial point, the Court dismisses any ADEA claim against the individual defendants.  "[I]n the Second Circuit, individuals may not be held liable under the ADEA." *Zoulas v. New York City Dep't of Educ.*, 400 F. Supp. 3d 25, 51 (S.D.N.Y. 2019); *see Wang v. Palmisano*, 157 F. Supp. 3d 306, 338 (S.D.N.Y. 2016) ("[C]ourts in the Second Circuit have consistently held that the ADEA does not impose liability on individuals.").

The Court also dismisses the ADEA claim against the Pension Fund.  Although the ADEA contains provisions relating to age discrimination in pension plans, *see* 29 U.S.C. § 623(i), these claims must be asserted by an employee against his or her "employer, employment agency, a labor organization, or any combination thereof," *id.*  The ADEA does not appear to permit claims brought by an employee against the pension fund itself.

Plaintiff's ADEA claim would also fail even if it were brought against the correct party. Plaintiff does not claim that there was any reduction in his benefits because of his "age."  29 U.S.C. § 623(i).  Instead, he asserts that his benefits were improperly reduced based on his shorter life expectancy.  Dkt. No. 22 at 2.  The ADEA does not prohibit this form of discrimination.

### D.    Retaliation

Plaintiff also appears to argue that Defendants' denial of the actuarial increase in his monthly benefits constituted retaliation for his prior dissent activities against 32BJ Local and the Pension Fund.  "As regards a retaliation claim, ERISA makes it 'unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary [of an employee benefit plan] . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.'"  *Wickes v. Westfair Elec. Co.*, 2021

WL 217318, at *9 (S.D.N.Y. Jan. 20, 2021) (quoting 29 U.S.C. § 1140). "Section 510 of ERISA 'was designed primarily to prevent unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights.'" *Ello v. Singh*, 531 F. Supp. 2d 552, 569 (S.D.N.Y. 2007) (quoting *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988)). "[A] § 510 claim involves three elements: 1) prohibited employer conduct; 2) taken for the purpose of interfering; 3) with the attainment of any right to which the employee may become entitled." *Id.* (quoting *Hayes v. Compass Group USA, Inc.*, 343 F. Supp. 2d 112, 121 (D. Conn. 2004)). Courts in the Southern District have held that "§ 510 only proscribes 'interference with the employment relationship.'" *Keir*, 2010 WL 3566878, at *9 (collecting cases); *see Tirone v. New York Stock Exch., Inc.*, 2006 WL 2773862, at *3 (S.D.N.Y. Sept. 28, 2006) ("Although the Second Circuit has not squarely addressed this issue, courts in this District have held that § 510 only proscribes interference with the employment relationship."). "In other words, in order for a claim under § 510 to survive, courts in this District require an employer to take an adverse employment action that consequently prevents an employee from attaining her benefits; mere denial of benefits is not enough, as § 502(a)(1)(B) provides the appropriate avenue for relief under that circumstance." *Wegmann v. Young Adult Inst., Inc.*, 2016 WL 827780, at *7 (S.D.N.Y. Mar. 2, 2016).

Plaintiff's claim for retaliation under ERISA must be dismissed. Plaintiff's claim is not premised on any interference with his employment relationship that was taken with the purpose of interfering with his attainment of benefits. Instead, he merely asserts that he was improperly denied benefits as retaliation for his prior dissent activities against 32BJ Local and the Pension Fund. The proper vehicle for such claims is through § 502(a)(1)(B), not § 510, and, as discussed

*supra* Section III.A., Plaintiff has not stated a valid claim for improper denial of benefits under
§ 502(a)(1)(B).

### E. Lack of a Suspension Notice

In a single sentence in his complaint, Plaintiff also states that he "never receive[d] any
suspension notice since September 2012 until the present time." Dkt. No. 1 at ECF p. 10.
Defendants respond that this argument may not properly be raised because Plaintiff "did not
make this contention to the Committee" and the Committee's determination that Plaintiff was not
entitled to the increase implicitly constituted a finding that his benefit was properly suspended
under the terms of the Plan. Dkt. No. 17 at 9 n.4.

It is unclear exactly what the basis of Plaintiff's claim that he never received any
suspension notice is. He does not point to any provision in the Plan that requires that a
participant receive a notice of suspension prior to such suspension; nor is such a provision
evident based on a review of the 2018 SPD. There is, however, authority for such a claim in the
applicable regulations.

ERISA provides that, as a general matter, "an employee's right to his normal retirement
benefit is nonforfeitable upon the attainment of normal retirement age." 29 U.S.C. § 1053(a).
However, "[t]here is an exception to the actuarial-adjustment requirement for a participant who
puts off retirement while continuing to work." *Canada*, 572 F. App'x at 311. Section
203(a)(3)(B) states in relevant part:

> A right to an accrued benefit derived from employer contributions shall not be
> treated as forfeitable solely because the plan provides that the payment of benefits
> is suspended for such period as the employee is employed

29 U.S.C. § 1053(a)(3)(B). "Employees who fall in this category are commonly referred to as
being in 'Section 203(a)(3)(B) service.'" *Canada*, 2010 WL 4877280, at *12. A party is in
Section 203(a)(3)(B) service either "by retiring and returning to work somewhere, or by

remaining in employment." *Id.* The purpose behind the provision has been stated as to "allow

employers to condition future benefits on a plan participant's agreement not to accept certain

kinds of postretirement employment." *Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739,

750 (2004).

ERISA's implementing regulations further define the plan's obligations under this

provision. They state: "A plan may provide for the permanent withholding of an amount which

does not exceed the suspendible amount of an employee's accrued benefit for each calendar

month, or for each four or five week payroll period ending in a calendar month, during which an

employee is employed in 'section 203(a)(3)(B) service.'" 29 C.F.R. § 2530.203-3. As relevant

here, the regulations state that: "No payment shall be withheld by a plan pursuant to this section

unless the plan notifies the employee by personal delivery or first class mail during the first

calendar month or payroll period in which the plan withholds payments that his benefits are

suspended." *Id*. § 2530.203-3(b)(4). The notification is required to include "a general

description of the plan provisions relating to the suspension of payments, a copy of such

provisions, and a statement to the effect that applicable Department of Labor regulations may be

found in § 2530.203-3 of the Code of Federal Regulations." *Id*. Further "the suspension notice

shall inform the employee of the plan's procedure for affording a review of the suspension of

benefits." *Id*. The 2018 SPD also makes clear that the "Plan is governed by regulations and

rulings of the [Department of Labor]" and that the Plan will "always be construed to comply with

these regulations, rulings and laws." Dkt. No. 17-1 at ECF p. 23.

Here, Plaintiff arguably raises a claim related to this regulation. However, even assuming

that he did, it is not clear exactly what type of claim that would be. *See Harris v. TD Ameritrade

Inc.*, 338 F. Supp. 3d 170, 188 (S.D.N.Y. 2018) ("Regardless of the degree of solicitude

extended, a *pro se* plaintiff, like any other plaintiff, 'must state a plausible claim for relief.'"

(citation omitted)).  Courts have repeatedly held that a technical failure to comply with this

provision alone "does not give rise to a substantive claim for withheld benefits under ERISA."

*Allbaugh v. California Field Ironworkers Pension Tr.*, 2016 WL 6138244, at *4 (D. Nev. Oct.

19, 2016); *see also Canada*, 2010 WL 4877280, at *15; *Monks v. Keystone Powdered Metal Co.*,

78 F. Supp. 2d 647, 670 (E.D. Mich. 2000), *aff'd*, 10 F. App'x 273 (6th Cir. 2001); *cf. Brightman*

*v. 1199seiu Health Care Emps. Pension Fund*, 2021 WL 809373, at *5 (S.D.N.Y. Mar. 2, 2021)

(involving remand to fund for consideration of lack of notice issue as well as other substantive

issues related to denial of claim).  They have reached this conclusion, in part, based on the

preamble to the pertinent regulations which states that the notice provision "affects only the

plan's right to begin withholding payments—it does not affect the plan's entitlement to

ultimately withhold or recoup all payments which it is entitled to withhold under § 2530.203–3."

46 Fed. Reg. 8894–01, 8901, 1981 WL 158784 (Jan. 27, 1981).  Plaintiff also has not clearly

pleaded that any such payments have been withheld.

It is possible that Plaintiff may be entitled to other types of relief, including equitable

relief, for the Pension Fund's failure to comply with the regulation.  However, the Court is

unable to discern based on the complaint and the record in front of it whether Plaintiff intends to

seek this type of relief and, if so, whether Plaintiff has adequately stated a claim for such relief.

Because it is unclear the exact basis for this claim and what type of relief Plaintiff seeks related

to the alleged failure of the Pension Fund to provide him with a suspension notice, the Court

dismisses this claim without prejudice to repleading.  *See Andino v. Fischer*, 698 F. Supp. 2d

362, 376 (S.D.N.Y. 2010) ("While held to a less stringent standard, the *pro se* plaintiff is not

relieved of pleading requirements, and failure to plead the basic elements of a cause of action may result in dismissal.").

In so holding, the Court rejects Defendants' arguments for dismissal.  Defendants argue that Plaintiff waived this claim by not raising it during his administrative proceedings.  This argument is unavailing.  It is true that "[c]ourts uniformly require exhaustion for claims based on violations of contractual rights protected by ERISA, such as [a] denial of benefits."  *Diamond v. Loc. 807 Lab.-Mgmt. Pension Fund*, 2014 WL 527898, at *6 (E.D.N.Y. Feb. 7, 2014), *aff'd*, 595 F. App'x 22 (2d Cir. 2014) (citation omitted).  However, district courts in this Circuit have routinely "dispensed with the exhaustion requirement where plaintiffs allege statutory ERISA violations."  *Diamond*, 595 F. App'x at 25; *see Savage v. Sutherland Glob. Servs., Inc.*, 521 F. Supp. 3d 308, 314 (W.D.N.Y. 2021); *Park v. Trustees of 1199 Seiu Health Care Emps. Pension Fund*, 418 F. Supp. 2d 343, 358 (S.D.N.Y. 2005) ("District courts within this Circuit, however, have permitted claims for statutory violations of ERISA even though administrative remedies were not exhausted."); *Stolarz v. Rosen*, 2005 WL 2124545, at *4 (S.D.N.Y. Aug. 26, 2005) (collecting cases).  And although the Second Circuit "has not addressed whether exhaustion is required for statutory claims, it has tacitly permitted district courts to continue applying this distinction in a manner consonant with the principles underlying exhaustion."  *McCulloch v. Bd. of Trustees of SEIU Affiliates Officers & Emps. Pension Plan*, 2016 WL 9022578, at *5 (S.D.N.Y. Mar. 31, 2016), *aff'd*, 686 F. App'x 68 (2d Cir. 2017) (cleaned up); *see also Stephens v. Pension Ben. Guar. Corp.*, 755 F.3d 959, 965 (D.C. Cir. 2014) ("The Third, Fourth, Fifth, Ninth, and Tenth Circuits have held exhaustion is not required when plaintiffs seek to enforce statutory ERISA rights rather than contractual rights created by the terms of a benefit plan.").

The reason for this distinction is "that while plan fiduciaries have expertise in interpreting plan documents, the Court has expertise in interpreting the statute." *Stolarz*, 2005 WL 2124545, at \*4.  As the D.C. Circuit has noted:

> While plan administrators may have particular expertise in interpreting their pension plans' terms, federal judges have particular expertise in interpreting statutory terms.  And while consistent application of a pension plan's terms might best be achieved by allowing plan administrators to interpret those terms in the first instance, consistent application of the law is best achieved by encouraging a unitary judicial interpretation of that law.  Federal district courts also have the expertise to create a factual record, should that be necessary, and to encourage settlement of disputes where appropriate.

*Stephens*, 755 F.3d at 966.  "Congress intended for the courts to develop a body of federal substantive law that would address issues involving rights and obligations under pension plans." *Id.*

The Court sees no reason to depart from the approach of the majority of courts to consider this issue.  The Court therefore holds that statutory claims may be exempted from ERISA's exhaustion requirement.  This is also consistent with the rule that "[t]o the extent . . . that Plaintiff's arguments require the Court to interpret ERISA and its implementing regulations, the Court will review the interpretation of those laws de novo." *Brightman*, 2021 WL 809373, at \*9.

This claim—to the extent it is pleaded and premised on the above-referenced regulation—is better characterized as a statutory violation and thus does not need to be exhausted.  "A statutory violation occurs when a plan is administered in a way that violates an ERISA provision whereas a plan-based claim involves the interpretation of the specific employee benefit plan at issue." *McCulloch*, 2016 WL 9022578, at \*6 (quoting *Cannon v. Douglas Elliman, LLC*, 2007 WL 4358456, at \*7 (S.D.N.Y. Dec. 10, 2007)).  This claim appears to center not on a particular provision of the Plan and therefore does not require an interpretation of that

Plan.  Instead, it concerns whether the Pension Fund complied with the notice provisions of a

regulation, specifically 29 C.F.R. § 2530.203-3(b)(4), issued pursuant to statutory authority.  *See*

*Savage*, 521 F. Supp. 3d at 314 (holding there was no exhaustion requirement where "[t]he

claims raised by Plaintiffs do not involve interpretation of the terms of the Plan; rather, they

concern Defendants' alleged statutory violations through improper administration of the Plan").

There is no reason to think that the Pension Fund administrators would be in a better position to

determine whether that regulation was complied with than a district court.  Deciding this issue

also promotes Congress's intent "to develop a body of federal substantive law that would address

issues involving rights and obligations under pension plans."  *Stephens*, 755 F.3d at 966.

Defendants further appear to argue that the Court should dismiss this claim because the

Appeals Committee's "determination that Guzman was not entitled to the increase because he

continued to work in Disqualifying Employment . . . encompasses a finding that his benefit was

properly suspended under the terms of the plan."  Dkt. No. 17 at n.4.  The basis for this claim is

unclear.  Defendants cite no law in support of this proposition.  The proposition also appears to

require this Court to accept—without question—that the Committee properly found that his

benefits were suspended.  The Court refuses blindly to do so, as it would be inconsistent with the

premise of judicial review.

## CONCLUSION

The motion to dismiss is GRANTED without prejudice as to all claims except the ADEA

and retaliation claims brought by Plaintiff against the Defendants.  Those claims are dismissed

with prejudice.[12]  Plaintiff shall file any amended complaint by April 18, 2023.  If Plaintiff does

not file an amended complaint by that deadline, the case shall be closed.

---

[12] Even a liberal reading of the complaint does not give any indication that a valid claim could be
stated against any of the Defendants with respect to these claims.  *See Shomo v. City of New*

The Clerk of Court is respectfully directed to close Dkt. No. 16.


SO ORDERED.


Dated: March 14, 2023                          _____
       New York, New York                              LEWIS J. LIMAN
                                                   United States District Judge

---

*York*, 579 F.3d 176, 183 (2d Cir. 2009).