```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
CARLOS J. GUZMAN,                                                :
                                                                 :
                              Plaintiff,                         :
                                                                 :       22-cv-01916 (LJL)
              -v-                                                :
                                                                 :       OPINION AND ORDER
BUILDING SERVICE 32BJ PENSION FUND et al.,                       :
                                                                 :
                              Defendants.                        :
                                                                 :
-----------------------------------------------------------------X
```

LEWIS J. LIMAN, United States District Judge:

Defendants Building Service 32BJ Pension Fund (the "Pension Fund"), Peter Goldberger as Executive Director of the Pension Fund, Howard I. Rothschild as Employer Trustee of the Pension Fund, and Kyle Bragg as Union Trustee (with the Pension Fund, "Defendants") move, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing the amended complaint of Plaintiff Carlos J. Guzman ("Plaintiff" or "Guzman") for failure to state a claim upon which relief can be granted. Dkt. No. 28.

For the following reasons, Defendants' motion to dismiss is granted.

## BACKGROUND

The following facts are drawn from Plaintiff's first amended complaint and his opposition to the motion to dismiss[1] and are accepted as true for purposes of the present motion.

---

[1] "Because [Guzman] is proceeding *pro se*, the Court may consider new facts raised in opposition papers to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original complaint." *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018); *see also Walker v. Schult*, 717 F.3d 119, 122 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion.").

Plaintiff *pro se* filed his original complaint in this action on March 7, 2022, complaining that Defendants violated his rights under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*, by, among other things, underpaying his retirement benefits. Dkt. No. 1. Generally, participants in the Pension Fund plan become entitled to receive a pension at age sixty-five. *Id.* at ECF p. 10. Under the Pension Fund's plan, a participant who delays the commencement of benefits is ordinarily entitled to an actuarial increase for the delay in commencement. *Id.* Plaintiff delayed the commencement of benefits and continued working full-time in the same industry. *Id.* at ECF p. 9. In early 2019, Plaintiff requested an application from the Pension Fund in order to initiate his receipt of monthly pension benefits because he was approaching the "Required Beginning Date" for benefits of April 1, 2019. *Id.* The Pension Fund informed him that his monthly benefit would be $1,317. *Id.* Plaintiff responded that the amount asserted by the Pension Fund did not reflect an actuarial increase and that he was instead entitled to $2,462. *Id.* Plaintiff then initiated this lawsuit, alleging as most relevant here: (1) an improper denial of an actuarial increase in his benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B); (2) breach of fiduciary duty under either ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) or ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(3); and (3) an unlawful failure to provide him a suspension notice.[2]

Defendants moved to dismiss the complaint. Dkt. No. 16. Among other points, Defendants noted that the Summary Plan Description ("SPD") dated January 1, 2018 ("2018 SPD"), applied to Plaintiff's claim that he was denied an actuarial increase. Dkt. No. 17 at 8. Under that document, if a plan participant waits to begin receiving a pension until after age sixty-

---

[2] Plaintiff also asserted claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and for retaliation under 29 U.S.C. § 1140.

five, the participant is entitled to "a monthly pension that is increased to reflect the period after [age sixty-five] during which [the participant was] not receiving benefits," except for an important proviso—"[n]o increase will apply to months for which your benefit was suspended." Dkt. No. 17-1 at ECF p. 20.  The 2018 SPD further provides that during the period from age sixty-five to age seventy-and-one-half, "[p]ension payments will be suspended for each month in which you work 40 or more hours in Disqualifying Employment."  *Id.* at ECF p. 18 (the "Suspension of Benefits provision").  "Disqualifying Employment" is defined by the 2018 SPD as "any work in the building service industry in Manhattan, Queens, Brooklyn, or Staten Island whether or not it is for a Contributing Employer."  *Id.*  Plaintiff did not dispute that he was engaged in Disqualifying Employment for more than forty hours per month.  Dkt. No. 17 at 8.  Defendants argued that, as a result, Plaintiff was not entitled to an actuarial increase for each of those months during which he was working and that his pension benefit was properly calculated.  *Id.* at 8–9.

On March 14, 2023, the Court issued its Opinion and Order granting Defendants' motion and dismissing Plaintiff's complaint without prejudice.  Dkt. No. 26.  As relevant here, the Court first concluded that Plaintiff was entitled to *de novo* review of the denial of his claim for an actuarial increase because he was denied a full and fair appellate review.  *Id.* at 19–23.  Applying *de novo* review, the Court held that Plaintiff did not state a claim for improper denial of the actuarial increase in his benefits under ERISA § 502(a)(1)(B).  *Id.* at 23–29.  The Court concluded that the 2018 SPD was applicable to Plaintiff's claim (rather than an outdated 2002 SPD), *id.* at 25–26, and that under the 2018 SPD he was not entitled to an increase in his monthly pension for the years he deferred collecting his pension between ages sixty-five and seventy-and-one-half because Plaintiff continued to work in the New York City building services industry and

for the Union past the age of sixty and thus had engaged in Disqualifying Employment, *id.* at 26–27.

The Court also rejected Plaintiff's claim for breach of fiduciary duty under ERISA §§ 502(a)(2) and (a)(3)(B). *Id.* at 29–32. The Court held that Plaintiff was not entitled to relief under ERISA § 502(a)(2) because that provision allows only claims brought in a representative capacity for losses to the Pension Fund plan, and Plaintiff alleged no such claim. *Id.* at 30. It further concluded that Plaintiff did not state a claim under ERISA § 502(a)(3)(B) because the essence of his claim was one for alleged underpayment under ERISA § 502(a)(1)(B). *Id.* at 31–32. Put differently, the Court found that "Plaintiff's breach of fiduciary duty claim is premised on identical facts as his denial of benefits claim under § 502(a)(1)(B) . . . . Thus, to the extent that Plaintiff's claims are successful, adequate relief will be available under § 502(a)(1)(B) and 'there is no need on the facts of this case to also allow equitable relief under § 502(a)(3).'" *Id.* at 32 (quoting *Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006)). The Court therefore dismissed Plaintiff's breach of fiduciary duty claim.

Reading Plaintiff's pro se complaint liberally, the Court also noted Plaintiff's single-sentence allegation that he did not receive a suspension notice. *Id.* at 35. ERISA generally provides that an employer must provide an actuarial increase for the time that an employee delays receipt of benefits past normal retirement age, but—as this case reflects—it contains an exception allowing for the suspension of benefit payments based on employment in certain jobs after the normal retirement date, referred to as § 203(a)(3)(B) service. *See Allbaugh v. Cal. Field Ironworkers Pension Tr.*, 2016 WL 6138244, at *3 (D. Nev. Oct. 19, 2016). ERISA's implementing regulations under that provision provide that "[n]o payment shall be withheld by a plan pursuant to this section unless the plan notifies the employee by personal delivery or first

4

class mail during the first calendar month or payroll period in which the plan withholds payments that his benefits are suspended." 29 C.F.R. § 2530.203-3(b)(4). The Court, construing Plaintiff's complaint liberally, proceeded as though Plaintiff raised a claim related to this regulation, but held that a technical failure to comply with the regulation did not give rise to a substantive claim for withheld benefits under ERISA. Dkt. No. 26 at 36–37.

Because Plaintiff is proceeding *pro se*, the Court dismissed the ERISA claims (other than those for retaliation) without prejudice.[3] On April 19, 2023, Plaintiff filed his first amended complaint. Dkt. No. 27. Defendants filed the instant motion to dismiss on May 3, 2023, along with a memorandum of law in support of the motion and a declaration attaching the relevant Summary Plan descriptions. Dkt. Nos. 28, 30–31. Plaintiff filed an affirmation in opposition to the motion on July 27, 2023. Dkt. No. 36. Defendants filed a reply memorandum in further support of the motion on August 4, 2023. Dkt. No. 37.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557. The ultimate question is whether "[a] claim has facial plausibility, [*i.e.*,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

---

[3] The Court also dismissed with prejudice Plaintiff's claims under the ADEA. Dkt. No. 26 at 32–33, 40.

678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]."  *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

The Court construes *pro se* pleadings broadly and liberally, interpreting them so as to raise the strongest arguments they suggest.  *See Abbas v. Dixon*, 40 F.3d 636, 639 (2d Cir. 2007); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000).  This obligation "is especially true when dealing with pro se complaints alleging civil rights violations."  *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 146 (2d Cir. 2002); *see also Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001) (same).  However, while the Court construes *pro se* pleadings liberally, *pro se* plaintiffs are not relieved of the requirement that they plead enough facts to "nudg[e] their claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  Nor does it relieve them of the obligation to otherwise comply with the pleading standards set forth by the Federal Rules of Civil Procedure.  *See Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007).  "Thus, the Court's 'duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it.'"  *Davila*, 343 F. Supp. 3d at 266 (quoting *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009)).

## DISCUSSION

Plaintiff's first amended complaint pleads three causes of action.  The first cause of action is headed "Suspension of Benefits Rules Notice."  Dkt. No. 27 at ECF p. 2.  In this cause of action, Plaintiff alleges that the 2018 SPD does not contain a "Suspension of Benefits Rules Notice" and that "the Pension Fund failed to mail the suspension notice."  *Id.* ¶¶ 4–5.  Plaintiff's second cause of action is labeled "Denial of Full and Fair Appellate Hearing."  *Id.* at ECF p. 3.

6

Plaintiff alleges that the notice he received of the appeals committee meeting on March 14, 2019 failed to inform of "the specific reasons" and the specific plan provision on which the decision that he was entitled only to a $1,317 monthly benefit—and not a monthly benefit of $2,462.59—was based. *Id.* ¶ 7. Plaintiff's third cause of action is titled "Actuarial Increase." *Id.* at ECF p. 4. Plaintiff alleges that Defendants deceived plan participants, violated ERISA regulations, and breached their fiduciary duties, including the duty of loyalty, by amending the SPD to eliminate increases in the pension benefit for months during which the participant's benefit was suspended without informing participants of the change. *Id.* ¶¶ 9–11. Plaintiff alleges that until November 2010, participants had the right to receive actuarial increases regardless of whether their benefits were suspended and that the Pension Fund trustees amended the SPD such that "[n]o increase will apply to months for which your benefit was suspended" without properly informing participants of the change. *Id.* Plaintiff seeks relief in the form of an order that Defendants pay him the actuarial increase of $1,105.34 per month from April 1, 2019 until the present time, and to continue to pay him the actuarial increase of $1,105.34 into the future. *Id.* at ECF pp. 4–5. Plaintiff also seeks compensatory damages for pain, mental and emotional distress, and anguish in the amount of at least $500,000, and punitive damages in the amount of at least $1,000,000. *Id.* at ECF p. 5.

     Defendants argue that Plaintiff's allegations fail to state a claim for relief. Dkt. No. 30 at 3–11. Defendants argue that the first cause of action repleads the same core claim—denial of benefits under 29 U.S.C. § 1132(a)(1)(B), ERISA § 502(a)(1)(B)—resolved by the Court in its prior Opinion and Order dismissing Plaintiff's claims, and similarly fails because the 2018 SPD applies to the circumstances at issue and provides for suspension in such circumstances. *Id.* at 3–4. Defendants also argue with regards to Plaintiff's first cause of action that the 2018 SPD did provide notice of the circumstances in which benefits would be suspended in a section entitled "Suspension

7

of Benefits," thereby rebutting Plaintiff's argument that Defendants did not provide notice. *Id.* at 4. Finally with regard to the first cause of action, Defendants argue that, as the Court held in its first Opinion and Order dismissing Plaintiff's claims, a technical failure to mail the suspension notice cannot give rise to a substantive claim for withheld benefits under ERISA. *Id.* at 5–6. Defendants argue that Plaintiff's second cause of action again repleads a claim from Plaintiff's original complaint—that he was improperly denied a full and fair hearing—and must similarly fail because the failure to provide Plaintiff sufficient notice in advance of the hearing gives rise to *de novo* review of the decision to deny the actuarial increase, and not monetary penalties. *Id.* at 6–7. Finally, Defendants argue that Plaintiff's third cause of action fails for two reasons. *Id.* at 7–10. Defendants first argue that amending a plan is not a fiduciary function, and that a plan amendment therefore cannot serve as the basis for a breach of fiduciary duty claim. *Id.* at 7. Defendants next claim that the plan could not have been improperly amended to revoke Plaintiff's entitlement to an actuarial increase because both the 2005 and 2010 SPDs, both of which are referenced in Plaintiff's amended complaint, also stated that plan participants who continued to work in covered employment after age sixty-five were not entitled to an actuarial increase. *Id.* at 8. Put differently, Defendants argue that amending the SPD in 2018 could not give rise to a claim for breach of fiduciary duty because the amendment did not change whether Plaintiff was entitled to an actuarial increase, and there was therefore no need to notify him of the non-change. *Id.* at 10.

      The first amended complaint does not cure the defects the Court identified in the initial complaint; Plaintiff still fails to state a claim for relief. Plaintiff appears not to dispute—but it is worth reiterating—that he is not entitled to an actuarial increase under the 2018 SPD. A denial

of benefits can be challenged under 29 U.S.C. § 1132(a)(1)(B), ERISA 502(a)(1)(B),[4] and is reviewable *de novo* when a plan administrator fails to comply with the Department of Labor's procedural regulations, unless the failure to do so was inadvertent and harmless. *In re DeRogatis*, 904 F.3d 174, 188 (2d Cir. 2018). The language of the 2018 SPD is clear and unambiguous. A plan participant is entitled to an actuarial increase for each month after reaching the normal retirement age of sixty-five during which the employee does not receive a pension except for those months in which the employee is engaged for more than forty hours in Disqualifying Employment. Plaintiff was engaged in Covered Employment which is a subset of Disqualifying Employment. *See* Dkt. No. 17-1 at ECF p. 33. The Plan properly denied him the actuarial increase.

Instead, Plaintiff alleges first that Defendants cannot enforce the rules with respect to suspension of benefits because "the 'Suspension of Benefits Rules Notice' . . . was not written in the 2018 Summary Plan Description" and "[p]articipants had no information and do not know that such 'Suspension of Benefits Rules Notice' exists." Dkt. No. 27 ¶ 4. However, Defendants do not rely upon a provision entitled "Suspension of Benefits Rules Notice" for their calculation of Plaintiff's pension benefit. They rely upon a provision entitled "Suspension of Pension Benefits" that is in the table of contents of the 2018 SPD and is labelled in bold. Dkt. No. 17-1 at ECF pp. 5, 21. For context, the relevant provisions, in pertinent part, are as follows:

> **Reemployment After Retirement**
>
> If you **Retire**, you may return to work. However, if you return to **Covered Employment** or another form of work that is considered **Disqualifying Employment**—which includes any work in the building service industry in Manhattan, Queens, Brooklyn or Staten Island whether or not it is for a

---

[4] Section 502(a)(1)(B) authorizes civil suits by plan participants to "recover benefits due to [the participant] under the terms of his plan, to enforce his rights under the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Contributing Employer—your pension may be suspended during that period of work . . .

- *After **Normal Retirement Age**, but before the calendar year following the year in which you reach age 70 ½*: Pension payments will be suspended for each month in which you work 40 or more hours in **Disqualifying Employment**.

. . .

**When Pension Benefits Begin**

. . .

If, after terminating **Covered Employment**, you wait to begin your pension until after **Normal Retirement Age**, you will receive a monthly pension that is increased to reflect the period after your **Normal Retirement Age** during which you were not receiving benefits. The increase will be 1% for each month your benefit was postponed after your Normal Retirement Age through age 70, and 1.5% for each month your benefit was postponed thereafter. No increase will apply to months for which your benefit was suspended.

**Suspension of Pension Benefits**

Payments begin when you **Retire** under the rules of the **Plan** and will generally continue for the rest of your life. However, if you work in **Disqualifying Employment** (as defined on pages 59–60) after retirement and have not reached your **Required Beginning Date**, your pension may be suspended. . . . You must notify Member Services within 30 days after beginning work in **Disqualifying Employment**. Failure to give this notice could cause your benefits to be suspended for up to an additional year after you stop working.

*Id.* at ECF pp. 18–21. Plaintiff's first cause of action is premised on an allegation that is defeated by the very document that he incorporates by reference.

Plaintiff's further allegation that he was not sent a suspension notice also does not state a claim for relief. In its Opinion and Order dismissing the original complaint, the Court noted that courts have repeatedly held that "a technical failure to comply with th[e notice] provision alone 'does not give rise to a substantive claim for withheld benefits under ERISA.'" Dkt. No. 26 at 37 (quoting *Allbaugh*, 2016 WL 6138244, at *4). The Court left open the possibility that Plaintiff might be entitled to other types of relief, including equitable relief, but noted that

10

Plaintiff had not requested any other type of relief. Dkt. No. 26 at 37. The Court adheres to its prior ruling. First, Plaintiff does not complain that Defendants improperly suspended his benefits; he complains that the benefits were improperly calculated. Further, "[w]hen read as a whole, the regulations plainly provided that a suspension notice is not required for an employee to be considered in or have been in § 203(a)(3)(B) service." *Allbaugh*, 2016 WL 6138244, at \*4. The provision of a suspension benefit notice thus was not a condition precedent necessary to be satisfied before the Pension Fund took Plaintiff's months of Disqualifying Employment into account in calculating the pension benefit that he was entitled to once he became entitled to pension benefits. *Id.*[5]

The allegations that form the basis for Plaintiff's second cause of action are identical to those that he made in his original complaint. *Compare* Dkt. No. 27 ¶ 7 *with* Dkt. No. 1 at ECF p. 9. The Court previously analyzed those allegations in its Opinion and Order dismissing the original complaint. *See* Dkt. No. 26 at 21–23. Plaintiff's allegations properly plead that he did not receive adequate notice of the reasons for the Plan's determination prior to his administrative appeal in violation of 29 C.F.R. § 2560.503-1(g). *Id.* at 21–22. As a result, the Court concluded that it would review *de novo* Defendants' calculation of the pension benefits to which Plaintiff was entitled. *Id.* at 23. Even assuming that the Pension Fund failed to follow the Department of Labor's claims-procedure regulations, however, that failure would not have been the cause of the

---

[5] Plaintiff also seeks emotional distress and punitive damages. Dkt. No. 27 at ECF p. 5. However, "[t]he law is clear that ERISA does not allow recovery of extracontractual or punitive damages for the wrongful denial of benefits" *Omara v. Local 32B-32J Health Fund*, 1999 WL 184114, at \*4 (E.D.N.Y. Mar. 30, 1999); *see also Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993) (holding that participants cannot recover extracontractual damages under ERISA § 502(a)(1)(B)); *Mass. Mut. Life Ins. Co. v. Russell*, 474 U.S. 134, 144 (1985) ("Significantly, the statutory provision explicitly authorizing a beneficiary to bring an action to enforce his rights under the plan . . . says nothing about the recovery of extracontractual damages.").

denial of his request for an increased pension benefit, and "a participant or beneficiary is not entitled to civil penalties for a plan's failure to comply with the claims-procedure regulation." *Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42, 61 (2d Cir. 2016); *see also Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co.*, 2016 WL 4382709, at *9 (S.D.N.Y. Aug. 16, 2016); *Sullivan-Mestecky v. Verizon Commc'ns Inc.*, 2016 WL 3676434, at *23 (E.D.N.Y. July 7, 2016). The second cause of action therefore does not state a claim for relief.

Plaintiff's third cause of action alleges that Defendants violated their fiduciary duties under ERISA by amending the plan to add the suspension of benefits provision, and by doing so without adequately informing participants. Dkt. No. 27 ¶¶ 9, 11. "Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries." *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996). "'Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate [pension] plans.'" *Id.* (quoting *Curtis-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) (cleaned up)); *see Janese v. Fay*, 692 F.2d 221, 227 (2d Cir. 2012); *Siskind v. Sperry Ret. Program, Unisys*, 47 F.3d 498, 505 (2d Cir. 1995) ("An employer that designs a retirement plan or amends an existing plan's design does not come within ERISA's definition of a fiduciary."). Plaintiff's third cause of action is defective for that reason alone.

Moreover, it appears that the third cause of action is based on a faulty predicate, which again is undermined by the documents incorporated by reference. *Wimberly v. Experian Info. Sols.*, 2021 WL 326972, at *3, 7–8 (S.D.N.Y. Feb. 1, 2021)); *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005) ("The Court . . . is not obliged to reconcile plaintiff's own pleadings that are contradicted by other matters asserted or relied upon or incorporated by reference by a

plaintiff in drafting the complaint."); *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 399–400 (S.D.N.Y. 2002) ("Furthermore, a court may consider documents attached to the complaint as exhibits, or incorporated by reference . . . . If a plaintiff's allegations are contradicted by such a document, those allegations are insufficient to defeat a motion to dismiss."); *see also L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (stating that allegations are "assume[d] to be true unless contradicted by more specific allegations or documentary evidence"). The 2010 SPD did not effect a change in the operative provisions of the Plan, albeit it made those provisions clearer. The 2005 SPD provides, in the relevant paragraph on "When Pension Benefits Begin," that "[i]f after terminating covered employment, you wait to begin your pension until some time after Normal Retirement Age (usually 65), the amount of your benefits will be actuarially increased to account for the later start of benefits." Dkt. No. 31-1 at ECF p. 30. Thus, two elements had to be satisfied under the 2005 SPD before a participant was entitled to an actuarial increase: (1) the participant had to have terminated covered employment; and (2) the participant deferred the beginning of the pension benefit. The 2005 SPD also states that a participant's pension benefits will be suspended for each month during which the participant works forty or more hours in Disqualifying Employment between Normal Retirement Age and the age of seventy-and-one-half. *Id.* at ECF p. 26. The same rules apply in the 2010 SPD, providing that the actuarial increase will only apply to participants who have terminated covered employment. Dkt. No. 31-2 at 29, 32. The principal difference is that in the 2010 SPD and the 2018 SPD, it is further emphasized that "[n]o increase will apply to months for which [the participant's] benefit was suspended." *Id.* at ECF p. 32. Because there is no dispute that Plaintiff was in Covered Employment, the changes in the SPD are immaterial; he was not qualified for an actuarial increase under the 2005 SPD, the 2010 SPD, or the 2018 SPD. The

change made from the 2005 and 2010 SPDs to the 2018 SPD therefore could not give rise to a claim for breach of fiduciary duty for failure to give notice because there was no change regarding Disqualifying Employment and actuarial increases that participants needed to be informed of.

## CONCLUSION

Defendants' motion to dismiss is GRANTED and the complaint is dismissed with prejudice.

The Clerk of Court is respectfully directed to close Dkt. No. 28 and to close this case.

SO ORDERED.

Dated: November 20, 2023
New York, New York

_____
LEWIS J. LIMAN
United States District Judge